**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JASON PUTNAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. 4:21-CV-00739-SDJ-CAN |
| | § | |
| PERFICIENT, INC., | § | |
| | § | |
| Defendant, | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Perficient, Inc.'s Motion to Transfer Venue [Dkt. 6].

Defendant asks to transfer this matter to the Eastern District of Missouri pursuant to a forum

selection clause in Plaintiff's "Confidentiality, Restrictive Covenant and Inventions Agreement."

Plaintiff opposes the request, contending: (1) Plaintiff's disability discrimination claims are

outside of the scope of the forum selection clause; and (2) the ADA's special venue provision

makes the forum selection clause unenforceable [Dkt. 8 at 13, 16]. Plaintiff also advances both

the private and public interest factors weigh against transfer. After reviewing the Motion to

Transfer [Dkt. 6], Plaintiff's Response [Dkt. 8], Defendant's Reply [Dkt. 9], Plaintiff's Sur-Reply

[Dkt. 11], and all other relevant filings, the Court recommends Defendant's Motion to Transfer be

**DENIED** as set forth herein.

**BACKGROUND**

On August 27, 2021, Plaintiff Jason Putnam ("Plaintiff") filed suit in the 199th Judicial

District Court, Collin County, Texas against his former employer Defendant Perficient, Inc.

("Defendant") alleging disability discrimination [Dkts. 1-1; 3]. After removal to this District (and

after the filing of Defendant's Motion to Transfer), on October 28, 2021, Plaintiff filed his First

Amended Complaint asserting claims under both federal and state law, specifically "under the Texas Commission on Human Rights Act ("TCHRA") [Texas Labor Code Chapter 21] and the Americans with Disabilities Act ("ADA") [42 U.S.C. 12101 et. seq.]" [Dkt. 7 at 1].

Defendant is a digital and information-technology consulting firm incorporated in Delaware and based in Missouri, with offices in Texas [Dkts. 1-3 at 1; 6 at 1]. Plaintiff, a Texas resident, was hired by Defendant in November 2018 as a Strategic Account Manager [*See* Dkt. 6-1 at 6]. Plaintiff worked remotely while occasionally reporting to a Perficient Office, specifically, Defendant's headquarters for its North Texas operations at 5340 Legacy Drive, Ste. 125 Plano, Collin County, Texas (the "Plano Office"), which is located in the Eastern District of Texas [Dkts. 6 at 1; 7 at 3, 7]. Plaintiff's live complaint pleads that, on or about January 25, 2019, Plaintiff suffered from a seizure while giving a presentation to the sales team [Dkt. 7 at 8]. Plaintiff alleges that after this incident, Defendant's employees began treating him differently [Dkt. 7 at 10]. Plaintiff alleges Defendant obtained medical information from his neurologist, including his seizure disorder diagnosis, which Plaintiff alleges constitutes a disability, and the medical precautions he was directed to take—including no driving [Dkt. 7 at 8]. Notwithstanding the precautions dictated by his neurologist, after the incident, Plaintiff's travel was increased as he was required to come into the Plano Office more often, and Defendant's employees were directed not to reach out, assist, or communicate with Plaintiff [Dkt. 7 at 10]. These actions caused Plaintiff significant stress and worsened his medical condition [Dkt. 7 at 11]. Due to a medication intolerance and increasing seizures, Plaintiff was approved for medical leave [Dkt. 7 at 11]. While on leave, a human resources representative informed Plaintiff his employment would likely be terminated upon his return to work due to poor job performance and because he had not been employed long enough to trigger leave under FMLA [Dkt. 7 at 11-12]. Plaintiff pleads Defendant

REPORT AND RECOMMENDATION – 2

should have known leave may be a reasonable accommodation for a disability [Dkt. 7 at 15]. Plaintiff's employment with Defendant was ultimately terminated upon his return to work [Dkt. 7 at 12].

Relevant to the instant Motion, Plaintiff pleads venue is proper in the Eastern District of Texas under both the ADA and general venue statute because Defendant hired Plaintiff in Texas, employed Plaintiff in Texas, fired Plaintiff in Texas, and committed unlawful employment practices in Texas, and because Defendant has offices in Texas, employs persons in Texas, and services clients in Texas [Dkt. 7 at 4-5]. Defendant urges to the contrary that upon being hired Plaintiff signed a "Confidentiality, Restrictive Covenant and Inventions Agreement" ("Agreement") containing a valid forum selection clause ("FSC"), which covers Plaintiff's claims and mandates a transfer of venue; the Agreement states, in pertinent part:

**Employment and Duties**

1. The employment relationship between the Company and Employee is at-will, i.e., it is not of a definite term and will continue only so long as both Employee and the Company wish for it to continue.

2. Employee owes a duty of loyalty, confidentiality and allegiance to act at all times In the best interests of the Company. Employee agrees not to do any act which would Injure the Company's business, Interests, or reputation.

….

**General Provisions**

22. Employee agrees that no modification to this Agreement is valid unless it is in writing and signed by an authorized representative of the Company.

23. The Employee acknowledges and agrees that this Agreement is made, formed and accepted in the State of Missouri and the interpretation, validity and effect of this Agreement shall be governed by the laws of the State of Missouri without regard to its conflicts of laws principles, or any rule or decision that would apply the substantive laws of another jurisdiction.

24. ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT SHALL BE INSTITUTED AND

LITIGATED EXCLUSIVELY IN THE COURTS OF THE STATE OF MISSOURI LOCATED IN THE COUNTY OF ST. LOUIS (OR, IF THERE IS JURISDICTION, THEN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA FOR THE EASTERN DISTRICT OF MISSOURI), AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING. ALL PARTIES IRREVOCABLY AND UNCONDITIONALLY AGREE THAT VENUE IN SUCH COURTS IS PROPER AND WAIVE ANY CLAIM THAT VENUE IN SUCH COURTS IS NOT PROPER, THAT IT IS AN INCONVENIENT FORUM, OR THAT THE CASE SHOULD BE TRANSFERRED TO ANOTHER FORUM.

[Dkt. 6-1 at 2, 5-6].

## MOTION TO TRANSFER

### *Applicable Legal Standard*

28 U.S.C. § 1404(a) governs the Court's decision whether to give effect to the FSC. Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Ordinarily, deciding a § 1404(a) motion to transfer venue, requires a two-part inquiry: first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of the parties and witnesses, and the interest of justice a transfer is appropriate. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). But when the parties have agreed to a valid forum-selection clause this analysis changes, and a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S.

49, 62 (2013). Indeed, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id*. at 63 (internal quotations marks and citations omitted). The Supreme Court has made clear that its "analysis presuppose[d] a contractually valid forum-selection clause." *Id.* at 62 n.5. Thus, before applying this modified analysis, a court must determine whether a valid and enforceable forum selection clause applies to the parties' dispute; stated differently, the inquiry into a clause's validity and scope thus precedes the question of transfer pursuant to that clause. *See, e.g.*, *Indus. Print Techs. LLC v. Canon U.S.A., Inc.*, No. 2:14-CV-00019, 2014 WL 7240050, at *1-2 (E.D. Tex. Dec. 19, 2014) ("[T]he *Atlantic Marine* analysis ... presupposes a valid contract and a dispute that unquestionably falls within the scope of that contract.").[1]

### Choice of Law

Defendant does not substantively brief the choice of law issues in this case. Federal law governs the enforceability of a forum selection clause, *Haynsworth v. The Corp*., 121 F.3d 956, 962 (5th Cir. 1997); however, the question of enforceability is distinct from the issue of interpretation. Plaintiff advances the Parties have agreed Missouri law applies to determine scope. While Defendant initially urged Texas and Fifth Circuit authority in its Motion to Transfer Venue, in its Reply, Defendant seemingly concedes Missouri law governs the Court's scope analysis. "[T]o interpret the meaning and scope of a forum selection clause, a court must use the forum's choice of law rules to determine what substantive law governs." *See Weber*, 811 F.3d at 770-71;

---

[1] A court, upon finding a forum-selection clause both mandatory and enforceable, must alter its traditional § 1404(a) analysis in three ways, such that: (1) plaintiff's "choice of forum when filing the lawsuit "merits no weight;" (2) the court does not consider the private interest factors; and (3) "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Scrum Alliance, Inc. v. Scrum, Inc.*, 4:20-CV-227, 2021 WL 798310, at *2 (E.D. Tex. Feb. 26, 2021) (quoting *Atl. Marine*, 571 U.S. at 64); *see also Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 767 (5th Cir. 2016). Thus, pursuant to *Atlantic Marine*, when determining whether extraordinary circumstances exist that warrant denial of transfer despite a valid forum-selection clause, only the public interest factors of a traditional § 1404(a) analysis are considered.

*Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 304 (5th Cir. 216); *Patrick Henry Med., LLC v. Prochant, Inc.*, No. 4:21-cv-00430, 2021 WL 5578680, at *3 (E.D. Tex. Nov. 29, 2021) ("[A] court sitting in diversity applies the forum's choice of law rules to determine what substantive law should guide the court's interpretation of the forum selection clause."). Texas choice of law rules, therefore, apply. The Agreement contains a choice-of-law provision, stating: "this Agreement shall be governed by the laws of the State of Missouri" [Dkt. 6-1 at 5]. Because Texas choice of law rules give effect to choice of law clauses, this Court will apply Missouri substantive law to ascertain the applicability of the forum selection clause. *Patrick Henry Med.,* 2021 WL 5578680, at *3 (citing *Benchmark Elec., Inc., v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003)) ("Texas law gives effect to choice of law clauses regarding construction of a contract."); *see also, FCX Solar, LLC v. FTC Solar, Inc*., No. 6:21-cv-548-ADA, 2021 WL 4953912, at *3 (W.D. Tex. Oct. 25, 2021); *Blacklands R.R. v. Northeast Tex. Rural Rail Transp. Dist.*, No. 1:19-cv-250, 2019 WL 3613071, at *4 (E.D. Tex. Aug. 5, 2019).

### *Enforceability of the FSC and the ADA Special Venue Statute*

Plaintiff, acknowledging a split in authority and no known Fifth Circuit precedent, briefly argues that the ADA's special venue provision makes the FSC unenforceable [Dkt. 8 at 16]. In Plaintiff's view, "public policy is thwarted" if civil rights plaintiffs can be required to litigate far from home as a condition of employment [Dkt. 8 at 17-18]. The ADA incorporates Title VII of the Civil Rights Act's special venue provision, which grants a plaintiff a range of possible venues in which to bring discrimination claims. 42 U.S.C. §§ 2000e–5(f)(3), 12117(a); *see Bolar v. Frank*, 938 F.2d 377, 378-79 (2d Cir.1991) (per curiam) (42 U.S.C. § 2000e–5(f)(3) governs venue for claims brought under Rehabilitation Act). More specifically, Title VII permits a suit to be brought in any of three specified venues: (i) "in any judicial district in the State in which the unlawful

employment practice is alleged to have been committed," (ii) "in the judicial district in which the employment records relevant to such practice are maintained and administered," or (iii) "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice."   42 U.S.C. § 2000e–5(f)(3).  The provision was designed to prevent "national companies with distant offices" from seeking to discourage claims by "forc[ing] plaintiffs to litigate far from their homes." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 505 (9th Cir. 2000).

The inclusion of a special venue provision in an act of Congress may express a broader federal policy of ensuring access to a federal forum to enforce certain statutory claims; and certainly, no Party disputes that the ADA special venue provision plainly authorizes commencement of this action in this District as Plaintiff pleads that a substantial portion of the acts or omissions giving rise to Plaintiff's claims occurred in this District.  "Yet, an across-the-board rule—i.e., that forum-selection clauses are unenforceable in all [ADA] suits as incompatible with the public policy concerns reflected in the statute's venue provision—is hard to reconcile with *Atlantic Marine*." *Barnes v. Fisher & Co., Inc.*, No. 3:19-cv-00224, 2020 WL 8714821, at *4 (S.D. Ind. May 18, 2020) (citing *Kessler v. Direct Consulting Assocs., LLC*, No. 17-11943, 2018 WL 7890862 (E.D. Mich. July 6, 2018)).  Indeed, in *Atlantic Marine*, the Supreme Court emphasized that "courts should not unnecessarily disrupt the parties' settled expectations" as embodied in a forum-selection clause, thus, forum selection clauses should be enforced except in "unusual cases." 571 U.S. at 66.  "A flat refusal to enforce forum selection clauses in all Title VII actions would not be confined to 'unusual cases.'" *Kessler*, 2018 WL 7890862, at *7.  It follows, then considering *Atlantic Marine*, that "the impact of Title VII's venue provision on the enforceability of a forum selection clause should be evaluated on a case-by-case basis." *Id.*

The Second Circuit's decision in *DeBello v. VolumeCocomo Apparel, Inc.*, 720 F. App'x 37, 40 (2d. Cir. 2017) finding the public policy interest did not override Plaintiff's knowing and voluntary agreement to an employment agreement with a forum selection clause underscores this rationale:

> We conclude ... that in the circumstances here, DeBello's public policy argument does not overcome the presumption that a valid forum-selection clause should be given controlling weight in all but the most exceptional cases. This is not an exceptional case. In *Martinez*, we upheld a forum selection clause designating England as the exclusive forum for the plaintiff's claims under the Americans with Disabilities Act, despite the Act's incorporation of Title VII's special venue provision and the "Act's identification of a strong federal interest in combating discrimination based on disability." 740 F.3d at 229. We are not persuaded here that the freely-bargained forum selection clause is unenforceable based solely on its conflict with a policy preference reflected in Title VII's special venue provision. Although DeBello is deprived of his choice of venue, he retains his right to litigate his discrimination claims. Moreover, DeBello, an experienced professional who was hired for an executive position at a relatively high salary, willingly entered into his employment agreement knowing it contained a forum selection clause, and he did so after he had the opportunity to consult with an attorney and make changes to the Agreement. [The defendant employer] is headquartered in Los Angeles and DeBello regularly interacted with [the company's] California-based employees.
>
> We emphasize that forum selection clauses do not have dispositive effect where the civil rights laws are concerned, and we do not foreclose the possibility that a conflict with Title VII's special venue provision, combined with other factors, may render a forum selection clause unenforceable. We hold simply that DeBello has not made a sufficient showing here.

*DeBello,* 720 F. App'x at 41. This reasoning is persuasive. *See Kessler*, 2018 WL 7890862, at *9 (declining to enforce Title VII special venue provision over forum selection clause); *Martinez v. Bloomberg LP*, 740 F.3d 211, 229-230 (2d. Cir. 2014) (calling it a "close question" but declining to enforce ADA special venue provision over forum selection clause). The undersigned declines to adopt Plaintiff's position, that forum selection clauses are *per se* unenforceable in light of the ADA's special venue provision. *See Chapman v. Dell*, NO. EP-09-cv-KC, 2009 WL 1024635, at *3 n.3 (W.D. Tex. Apr. 15, 2009) (rejecting *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954 (M.D.

Tenn. 2008) and *Thomas v. Rehab Servs. of Columbus, Inc.*, 45 F. Supp. 2d 1375 (M.D. Ga. 1999), the cases relied on by Plaintiff, which announced a bright-line rule that forum selection clauses are invalidated by Title VII's venue provision in all cases).[2]

### Scope of the Forum Selection Clause

Even if a forum selection clause is valid, it may nevertheless not apply to all claims between the parties to a contract. Here, the FSC calls for "any legal suit, action or proceeding arising out of or based upon this agreement" to proceed in Missouri state or federal courts. Defendant urges the broad language of the forum selection clause covers Plaintiff's disability discrimination claims [Dkt. 6 at 4]. While Plaintiff contends to the contrary that, in Missouri, such a clause only covers claims that are neither dependent on, nor require reference to, the contract, thus Plaintiff's claims are outside the scope of the FSC [Dkt. 8 at 12].

As set forth *supra*, Missouri law governs the question of the scope or applicability of the instant FSC [*See* Dkts. 8 at 10; 9 at 1]. Both Parties agree that Missouri looks at the scope of a forum selection clause like it does the scope of an arbitration clause [Dkts. 8 at 11; 9 at 2]. Under Missouri law,

> In determining whether the parties have contracted to arbitrate, the usual rules of state contract law and canons of contract interpretation apply. The guiding principles of contract interpretation under Missouri law is that a court will seek to ascertain the intention of the parties and to give effect to that intent. The intent of the parties' contract is presumed to be expressed by the ordinary meaning of the contract's terms. If the contract is unambiguous, it will be enforced according to its terms. If ambiguous, it will be construed against the drafter.

> The trial court should order arbitration of any dispute that touches matters covered by the parties' contract. As part of the scope analysis, the court must look to any exclusions or exceptions in the arbitration agreement. Express provisions excluding particular grievances from arbitration are enforceable.

---

[2] While there may be a scenario where the possibility that a conflict with the ADA's special venue provision, combined with other factors, may render a forum selection clause unenforceable, here Plaintiff has not argued such.

> For a tort claim to be subject to arbitration, it must raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract. Where a tort claim is independent of the contract terms and does not require reference to the underlying contract, arbitration is not required. The relationship between the tort claim and the contract is not satisfied simply because the dispute would not have arisen absent the existence of the contract between the parties.

*St. Louis Regional Convention v. National Football League*, 581 S.W.3d 608, 617 (Mo. Ct. App. 2019). Applying these principles to forum selection clauses, Missouri courts have found "whether a forum-selection clause that by its terms applies to contract actions also reaches non-contract claims 'depends on whether resolution of the claims relates to interpretation of the contract.'" *Major v. McCallister*, 302 S.W.3d 227, 231 (Mo. Ct. App. 2009) (citing *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)); *Reed v. Reilly Co.*, 534 S.W.3d 809, 811 (Mo. 2017). In other words, forum selection clauses reach non-contractual claims when those claims "cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Corel Corp. v. Ferrellgas Partners, L.P.*, 633 S.W.3d 849, 856 (Mo. Ct. App. 2021) (quoting *Major*, 302 S.W.3d at 232); *see also January v. Invasix, Inc.*, No. 4:20-CV-01203-JAR, 2021 WL 168750, at *6 (E.D. Mo. Jan. 19, 2021) (citing *Reed*, 534 S.W.3d at 811) (finding that if the "resolution of [the] claims would necessarily require an inquiry into the terms and enforceability of the agreement" the claims would be considered within the scope of the arbitration clause). Thus, as Plaintiff argues, forum selection clauses under Missouri law do not reach non-contractual claims where the claims are "independent of the contract terms and do[] not require reference to the underlying contract." *Seaboard Corp. v. Grindrod, Ltd.*, 248 S.W.3d 27, 32-33 (Mo. Ct. App. 2008) ("None of the claims are based on actions connected to the Agreement or carried out under the Agreement. None of the allegations require reference to or construction of the Agreement. All of the claims alleged in the Petition could have been brought even if the

Agreement had never been signed.  Based on the claims raised in the Petition, the arbitration clause in the Agreement is not applicable."); *see also Greenwood v. Sherfield*, 895 S.W.2d 169, 175 (Mo. Ct. App. 1995) (finding that the arbitration clause did not apply to tort claims where "there [was] no meaningful connection between Plaintiffs' tort claims and the terms, conditions, or subject matter of the" agreement).[3]

Plaintiff's Amended Complaint states three claims for relief: (1) "disability discrimination"; (2) "failure to consider or provide reasonable accommodation"; and (3) "separate ADA claim" [Dkt. 7 at 14-16].  Plaintiff has not alleged a breach of the Agreement itself and does not invoke its terms in his First Amended Complaint.  *Greenwood*, 895 S.W.2d at 175 (finding the arbitration clause inapplicable where "Plaintiffs' action is in no way based on an alleged breach of the Merchant Contract and neither invokes nor needs to invoke the Merchant Contract."). Moreover, Plaintiff's discrimination claims exist by statute regardless of the existence of the Agreement; the claims do not depend on the existence of the Agreement, nor do they require interpretation of the Agreement.

Notwithstanding, Defendant, in reliance on *State ex rel. Todd Hewitt v. Honorable Kristine Kerr*, 461 S.W.3d 798 (Mo. 2015), urges Plaintiff's claims have a "meaningful connection" to the Agreement.  Defendant argues that it is by no means a "stretch" to determine that Plaintiff's employment discrimination claims "touch upon or refer to" Plaintiff's employment with Defendant, which was the basis of the Agreement [Dkt. 9 at 3].  In *Hewitt*, the agreement stated

---

[3]In *Kleiman v. Kings Point Capital Management, LLC*, NO. 4:178CV2278HEA, 2018 WL 3328012 (E.D. Mo. July 6, 2018), the Court outlines that the Eighth Circuit, which encompasses Missouri, considers three tests for determining whether the forum selection clause will apply.  Generally, a forum selection clause will apply in the following cases: (1) where the tort claims ultimately depend on the existence of a contractual relationship between the parties; (2) where resolution of the tort claims relates to interpretation of the contract; or (3) where the tort claims involve the same operative facts as a parallel claim for breach of contract. *Id*. (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd*., 709 F.2d 190, 203 (3d Cir. 1983)); *Manetti–Farrow, Inc.*, 858 F.2d at 514; *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993).

"[t]he Rams and Hewitt also severally and mutually promise and agree that [] any dispute which may arise between them," shall be submitted to arbitration. *Id.* at 804. Considering this language, *Hewitt* Court found, with limited discussion, that plaintiff's age discrimination claim under the Missouri Human Rights Act was within the scope of the arbitration clause. Indeed, in its entirety, the *Hewitt* Court opined:

> Under Missouri law, "[i]f a contract is unambiguous, the intent of the parties is to be discerned from the contract alone based on the plain and ordinary meaning of the language used." *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. banc 2012) (internal quotations omitted). The agreement at issue here mandates arbitration of "any dispute which may arise" between Mr. Hewitt and the Rams. "Any dispute" plainly means any dispute, including Mr. Hewitt's statutory claims under the MHRA. Mr. Hewitt's efforts to characterize this language as too ambiguous to be inclusive of statutory claims are unavailing.

*Id.* at 814. The present case is distinguishable. As the *Hewitt* Court alluded, whether or not a forum selection clause applies depends on what the specific clause at issue says. *Worley v. Celebrate Children Int'l, Inc.*, No. 1:16-cv-96, 2016 WL 6777899, at *3 (E.D. Mo. Nov. 16, 2016) (quoting *Berrett v. Life Ins. Co. of the Southwest*, 623 F. Supp. 946, 948-49 (D. Utah 1985) ("Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case."). While in *Hewitt*, the agreement broadly applied to any dispute between the Parties, here, the FSC is more limited, encompassing only suits "arising out of or based upon this agreement" [Dkt. 6-1 at 6]. *See Ross v. Extreme Techs., Inc.*, No. 09-0787-CV-W-SOW, 2009 WL 10671679, at *5 (W.D. Mo. Dec. 21, 2009) ("The words 'relating to' are less restrictive than 'arising out of' and indicate that a claim may be 'associated with' an agreement to be covered."); *Qualls v. Prewett Enterprises, Inc.*, No. 3:21-cv-00192, 2022 WL 889034, at *4 (S.D. Tex. Mar. 25, 2022) (forum selection clauses that cover disputes that "relate to" an agreement are generally interpreted broadly, while clauses that use the language "arising out of" an agreement are construed narrowly). The phrases

"arising out" and "based upon" signal the forum selection clause should be interpreted more narrowly than that in *Hewitt*. *Buc-ee's, Ltd. v. Bucks, Inc*., 262 F. Supp. 3d 453, 460 (S.D. Tex. 2017) (quoting OXFORD DICTIONARY (3d ed. 2010)) (finding the phrase "brought under" akin to the wording of narrow forum selection clauses, such as those applying to claims "arising out of" an agreement).

The facts of *Moore v. Perficient, Inc.*, 1:20-cv-2124, 2020 WL 11884718 (N.D. Georgia Sept. 17, 2020), are persuasive in such interpretation. In *Moore*, the plaintiff sued Defendant Perficient under the ADA, raising claims for disability discrimination and failure to accommodate. *Id*. at *1. Interestingly, in *Moore*, the plaintiff pleaded that after making Perficient aware of her alleged disability her travel assignments were increased. *Id*. There too, Defendant moved to transfer venue to the Eastern District of Missouri citing the plaintiff's execution of a "Confidentiality and Intellectual Property Agreement." *Id*. at *2. Though not identical to the terms of the Agreement in this case, the *Moore* agreement states, among other things, "[t]he Company and Employee agree that the state and federal courts situated in St. Louis, Missouri shall have personal jurisdiction over the Company and Employee to hear all disputes *arising under* this Agreement." *Id*. (emphasis added). The *Moore* Court found "nothing in [this language] suggests that its scope extends to employment discrimination claims arising under federal law." *Id*. Indeed, the *Moore* Court continued, "it applies only to 'certain aspects of Employee's employment with the Company' which appear principally to be confidentiality and intellectual property matters." *Id*. Thus, the *Moore* Court declined Perficient's request to transfer, opining that the "Confidentiality and Intellectual Property Assignment Agreement" did not cover the plaintiff's employment discrimination law claims. *Id*. at *3.

Similarly, here, the language of the Agreement does not suggest its scope extends to Plaintiff's disability discrimination claims. Nothing in the Agreement specifically addresses the issue of discrimination and Plaintiff's right to be free of discrimination. The Agreement, as in *Moore*, focuses on confidential information, inventions, and intellectual property, "[t]here is no meaningful connection between Plaintiff's [employment discrimination claims] and the terms, conditions, or subject matter" of the Agreement. *Greenwood*, 895 S.W.2d 169 at 175. Further, to reiterate, the claims alleged by Plaintiff could have been brought had the Agreement never been signed; they do not depend on the existence of the Agreement. They can also be adjudicated without analyzing whether the Parties were in compliance with the Agreement. As they neither "arise from" nor are "based on" the Agreement, Plaintiff's live claims do not fall within the scope of the FSC. *Jitterswing, Inc. v. Francorp, Inc*., 311 S.W. 3d 828, 830 (Mo. Ct. App. 2010) (finding "any dispute arising under this Agreement" did not apply to statutory tort claim); *Luebbering v. Varia*, 637 S.W.3d 366, 372 (Mo. Ct. App. 2021) (finding forum selection clause stating "[a]ny dispute arising under or in connection with this [contract] and any claim affecting its validity, construction, effect, performance or termination...." was insufficient to encompass tort claims).

### Section 1404(a) Analysis

Having determined the FSC does not apply, the Court turns to the traditional two-step analysis to determine whether it should still transfer Plaintiff's claims. Again, the initial determination under 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *Volkswagen I*, 371 F.3d at 203; *ATEN Int'l Inc. v. Emine Tech Co., Ltd.*, 261 F.R.D. 112, 123 (E.D. Tex. 2009). Venue is proper in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a

judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction. *See* 28 U.S.C. § 1391(b). Then second, whether the movant has shown the convenience of the parties and witnesses and the interest of justice counsel in favor of transfer. *Volkswagen I*, 371 F.3d at 203. The Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id*. The party seeking transfer of venue must show good cause for the transfer. *Id*. The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id*.

### *Eligibility for Transfer*

The threshold inquiry, whether this case is eligible to be transferred, is met in this case.

A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of

the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's jurisdiction concerning such action.

28 U.S.C. § 1391(b).  Defendant moves the Court to transfer this case to the Eastern District of Missouri [Dkt. 6 at 6].  Defendant Perficient, Inc., a corporation, is essentially at home in the St. Louis, Missouri; Defendant's principal place of business is located in St. Louis, Missouri, squarely within the Eastern District of Missouri.  28 U.S.C. § 105(a)(1).  Because Defendant is subject to personal jurisdiction in the Eastern District of Missouri, it can be said to reside in that jurisdiction, meaning that district court could be a proper venue.  *Hill-Green v. Experian Info. Sols., Inc.*, No. 3:19CV708, 2020 WL 5539042, at *5 (E.D. Va. Sept. 15, 2020) (citing 28 U.S.C. § 1391(b)(1)) (internal citation omitted).  Defendant has met its burden under 28 U.S.C. § 1391(b)(1) to establish this action could have been filed in the transferee forum.

### Private Interest Factors

Defendant has a heavy burden to show that Plaintiff's choice of venue is a clearly more convenient forum.  *EnviroGLAS Prods., Inc. v. EnviroGLAS Prods., LLC*, 705 F. Supp. 2d 560, 567 (N.D. Tex. 2010) ("It is well settled that the party moving for a change of venue bears the burden of demonstrating why the forum should be changed. Placing the burden on the moving party to show 'good cause' for the transfer 'reflects the appropriate deference to which the plaintiff's choice of venue is entitled.'").  Moreover, "[a] Defendant must properly establish relevant venue facts by affidavit, deposition, or otherwise[,] as opposed to making unsupported assertions."  *Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 571 (E.D. Tex. 2004).  Defendant's Motion to Transfer notably fails to offer any analysis of the private interest factors.  Indeed, Defendant advances: "the Employment Agreement's forum-selection clause is valid and covers the claims made in Plaintiff's Complaint. Consequently, Plaintiff's reference to

private interest factors is completely irrelevant" [Dkt. 9 at 5]. Plaintiff argues that by declining to address them, Defendant loses all four private interest factors by default. *Alliance Transp. & Logistics, LLC v. G&J Truck Sales, Inc.*, No. 3:20-CV-3451-B, 2021 WL 5882820, at *4 (N.D. Tex. Dec. 31, 2021) ("[B]ecause [defendant] failed to identify any [considerations of this factor], the Court cannot find this factor favors transfer."). Plaintiff further urges that "all four [private interest factors] would favor the present forum anyway" [Dkt. 8 at 18-21].

**(1) Relative Ease of Access to Sources of Proof**

"When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored." *Garrett v. Hanson*, 429 F. Supp. 3d 311, 318 (E.D. Tex. 2019) (citing *Volkswagen II*, 545 F.3d at 316)). This relative ease of access to sources of proof is still a relevant part of the transfer analysis despite technological advances that have made transporting large volumes of documents across the country more convenient. *Volkswagen II*, 545 F.3d at 316. There is no indication at this juncture that documents or physical evidence are located within the Eastern District of Missouri, as opposed to the Eastern District of Texas where Defendant's Plano Office is located and where Plaintiff reported for work. *See Lozada-Leoni v. MoneyGram Int'l, Inc.*, No. 5:19CV11-RWS-CMC, 2019 WL 7875058, at *16 (E.D. Tex. Nov. 25, 2019) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013)) ("The Fifth Circuit found the relative ease of access to sources of proof weighed in favor of transfer 'because all of the documents and physical evidence [were] located in the [transferee district].'"), *report and recommendation adopted*, No. 519CV00011RWSCMC, 2020 WL 428080 (E.D. Tex. Jan. 28, 2020). Moreover, Plaintiff states the sources of proof identified thus far are witnesses present in Texas. This factor weighs against transfer. *See Texas v. Google, Inc.*, No. 4:20-cv-957, 2021 WL 2043184, at *4 (E.D. Tex. May 5, 2021) (finding the ease-of-

REPORT AND RECOMMENDATION – 17

access factor weighed against transfer where defendant failed to demonstrate that "the ease of access to sources of proof is relatively greater in the [transferee district] than in the [transferor district].").

### (2) Availability of Compulsory Process to Secure Attendance of Unwilling Witnesses

"The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Garrett*, 429 F. Supp. 3d at 318 (citing *Volkswagen II*, 545 F.3d at 316)).  However, "[o]nly witnesses who are likely to have 'relevant and material information; as to the instant litigation count towards this factor. And, significantly, only witnesses who are likely unwilling to attend trial are considered under this factor*." Adams v. Experian*, No. 4:21-CV-069-SDJ, 2021 WL 4891381, at *3 (E.D. Tex. Oct. 20, 2021) (internal citations omitted); *see also Google,* 2021 WL 2043184, at *4.  A court's subpoena power is governed by the Federal Rules of Civil Procedure 45.  FED. R. CIV. P. 45.  "For purposes of § 1404(a), there are three important parts to Rule 45." *Garrett*, 429 F. Supp. 3d at 318 (citing *VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014)).  Under Federal Rule of Civil Procedure 45, this Court "has subpoena power over witnesses that live or work within 100 miles of the courthouse." *Id.* (citing FED. R. CIV. P. 45(c)(1)(A)).  "Second, [this Court] has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in 'substantial expense.'" *Id.* (quoting FED. R. CIV. P. 45(c)(1)(B)(i)-(ii)).  "Third, [this Court has] power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works." *Id.* (citing FED. R. CIV. P. 45(a)(2), (c)(1)).  Plaintiff avers

that the non-party witnesses identified reside "here in Texas [where he worked], who are outside of his control, could become outside subpoena range" [Dkt. 8 at 20]. Plaintiff, however, offers no explanation as to their willingness or the importance of their testimony. As such, the Court finds that this factor only weighs slightly against transfer. *See Adams*, 2021 WL 4891381, at *3.

### (3) Cost of Attendance of Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Garrett*, 429 F. Supp. 3d at 319 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (5th Cir. 2009)). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (citation omitted); *accord Techradium Inc. v. Athoc, Inc.*, No. 2:09-CV-275, 2010 WL 1752535, at *2 (E.D. Tex. Apr. 29, 2010) (citing *Volkswagen I*, 371 F.3d at 204-05)). Significantly, this factor relates primarily to the inconvenience placed on willing nonparty witnesses, not party witnesses. *See, e.g., Seven Networks*, *LLC v. Google LLC,* No. 2:17-CV-00442, 2018 WL 4026760, at *9 (E.D. Tex. Aug. 15, 2018) (collecting cases); *Frederick v. Advanced Fin. Sols., Inc.*, 558 F.Supp.2d 699, 704 (E.D. Tex. 2007) ("[T]he availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant."). Again, the Court is provided little information other than the fact that the witnesses identified by and between the Parties, willing or unwilling, reside in Texas. Due to the witnesses alleged closeness to this District and, thus, the increase in cost for travel and lodging in St. Louis alone, the Court finds on the facts before it this factor too weighs against transfer.

**(4) All Other Practical Problems**

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Garrett*, 429 F. Supp. 3d at 319 (citing *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010)).  Plaintiff offers no practical problems for transferring the case, and merely states "Perficient identifies no practical problems with keeping this case here" [Dkt. 8 at 21].  As stated *supra*, Defendant offers no argument on any of the private interest factors.  Thus, this factor is neutral.  *Alliance Transp. & Logistics,* 2021 WL 5882820, at *4.

**Public Interest Factors**

**(1) Court Congestion**

Defendant's Motion to Transfer also fails to offer analysis of the public interest factors, save this one court congestion. The first public-interest factor is the "speed with which a case can come to trial and be resolved."  *Garrett*, 429 F. Supp. 3d at 319 (quoting *Genentech*, 566 F.3d at 1347)).  "Generally, this factor favors a district that can bring a case to trial faster."  *Ho Keung Tse v. Blockbuster, LLC*, No. 4:12-CV-328, 2013 WL 949844, at *5 (E.D. Tex. Jan. 17, 2013), *report and recommendation adopted*, No. 4:12-CV-328, 2013 WL 942496 (E.D. Tex. Mar. 8, 2013).  However, this factor is "the most speculative," and "case-disposition statistics may not always tell the whole story" because "[c]omplex cases ... need more time for discovery and take longer to get to trial," no matter where they proceed.  *Virginia Innovation Sci., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474–477, 2019 WL 3082314, at *32 (E.D. Tex. July 15, 2019).  Plaintiff postures that even though the Eastern District of Texas may have more cases, this District is less congested

based on speed.  As Plaintiff explains: from 2019-2020, the Eastern District of Texas had 1200 more cases than the Eastern District of Missouri; however "[d]uring the same period, the median time interval from filing to disposition during trial in months is EDTX (19.1) v. EDMO (29.8)" [Dkt. 8 at 21 (citing Table C-5 U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2020, https://www.uscourts.gov/statistics/table-c-5/federal-judicial-caseload-statistics/2020/03/31)].  Consideration of those median times dictates that the first public interest factor weighs against transfer.  *See Google*, 2021 WL 2043184, at *9 (finding that "based on both the shorter median disposition and trial times in this district and the likelihood of a shorter discovery period if this action is kept separate, the Court concludes that this factor weighs against transfer.")

### (2) Deciding Local Interest at Home

Second, the Court must consider the local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Lozada-Leoni*, 2019 WL 7875058, at *18 (citing *Potter v. Cardinal Health 200, LLC*, No. 2:19-cv-00007, 2019 WL 2150923, at *5 (E.D. Tex. May 16, 2019)).  While a defendant entity is a resident in the district that is home to its principal place of business, a defendant entity is also a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).  Plaintiff, while still a resident of Texas, does not presently reside in the Eastern District of Texas [Dkt. 7 at 2 (now resides in Tarrant County)], Defendant's Plano Office is within the Eastern District of Texas.  Thus, Defendant is a resident of the transferee and transferor district.  However, because Defendant's principal place of business is in the transferor district and Plaintiff does not reside in

the Eastern District of Texas, the Eastern District of Missouri has a stronger local interest in deciding this case. *Adams*, 2021 WL 4891381, at *6 (finding this factor weighed in favor of transfer where defendant's headquarters was located in the transferee district).

### (3) Familiarity with Texas Law

The Court must next consider its "familiarity of [] the law that will govern the case[.]" *Radmax*, 720 F.3d at 288. Because Plaintiff brings claims under Texas law, which this Court has more familiarity with than the Missouri court, the Court finds this factor weighs against transfer. *See Google*, 2021 WL 2043184, at *9.

### (4) Absence of foreign law problems

Finally, in deciding whether to transfer the case, the Court must consider "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Radmax*, 720 F.3d at 288. Plaintiff states only there is no problem applying foreign law here. This factor is neutral. The Court, having considered each of the relevant factors, concludes that Defendant's Motion to Transfer should be denied.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends that Defendant Perficient, Inc.'s Motion to Transfer Venue [Dkt. 6] be **DENIED** as set forth herein.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglas v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 20th day of July, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE